UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Case Number: 3:14-cr-255 |
| § | |
| CHADDRICK ASHLEY, § | |
| § | |
| Defendant. § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant Chaddrick Ashley's Motion to Suppress Evidence. [Docket #82]. For the reasons stated below, the Motion is **GRANTED**.

**I.   FACTUAL BACKGROUND**

On the evening of March 26, 2014, Dallas Police Officers Jeffery Eggleston and David Pillar were on patrol when they drove through the parking lot of the Orange Extended Stay Motel (the "Orange Motel") around 8:30 P.M. Officer Eggleston testified that officers routinely patrol the Orange Motel because it is considered a high crime location, having been associated with prostitution, drug crimes, and robberies. On the night of the events in question, they were not responding to a particular call.

When the officers reached the back side of the Orange Motel, they noticed that a door leading to an interior hallway was propped open, which they found to be unusual, since those doors at the Orange Motel are usually closed. As they were looking at the open door, they spotted the Defendant "peeking around the corner looking out toward the parking lot." It is unclear whether the Defendant was already looking out of the doorway when the officers drove

1

up, or whether the Defendant peeked his head out as the officers drove up. Officer Eggleston testified he saw the Defendant "from about his stomach up." According to the officers, as soon as the Defendant saw the squad car, "he jumped back real quick out of [the officers'] sight." On cross-examination, Officer Eggleston clarified that he could not see the Defendant's feet, but by "jump" he meant that the Defendant "moved out of the way real quick." Officer Eggleston testified that he and Officer Pillar believed that the Defendant was trying to avoid being seen by the police. This piqued the interest of the officers, who continued to drive around the Orange Motel. When they reached the opposite end of the building, they looked into the same hallway from the other direction and observed that the Defendant was no longer in the hallway.

      The officers had begun to circle the Orange Motel again when they noticed the Defendant for a second time, this time with an acquaintance later identified as Jesus Dorado, coming out of the north side of the Orange Motel. The two men appeared to be leaving the Orange Motel, walking toward the parking lot, which Officer Eggleston testified was very well lit. Officer Eggleston testified that because the Defendant had walked out of a different door than the one where they initially spotted him, it "raised [their] suspicion more." As the officers continued to drive forward, the Defendant and Dorado spotted the patrol car, and at what was apparently the same moment, the officers' vision of the Defendant and Dorado was obstructed by hedges to their right. When the officers passed by the hedges, they could no longer see the Defendant or Dorado, so they concluded that the two men were hiding. Officer Eggleston testified that he and Officer Pillar never lost sight of the door to the Orange Motel, and that there was "no way [the Defendant and Dorado] could have made it back inside the door without [the officers] seeing them." The officers believed the Defendant and Dorado were hiding between the cars in the

parking lot. The officers concluded the Defendant was trying to avoid them for a second time.

The officers continued to drive slowly through the parking lot, looking in between cars for the Defendant and Dorado. They had reached one end of the parking lot and turned around, when they noticed a white car's lights turn on. The car was parked near the place where the officers originally spotted the Defendant and Dorado exiting the Orange Motel. Dorado was driving the white car, and the Defendant and another person, later identified as Denarrion McMillan, were passengers. As the police officers passed the car, Dorado began to back out, and turned to go in the opposite direction from the officers. Officer Eggleston testified that they believed this was suspicious.

The officers turned around, caught up with the white car, activated their vehicle's patrol lights, and pulled the car over. Officer Eggleston testified that the time from when they first spotted the Defendant until they pulled the white car over was 2-5 minutes. Officer Eggleston testified that he and Officer Pillar did not suspect the Defendant of doing "anything particular," but that they found it suspicious that Defendant was trying to avoid them.

After they stopped the white car, the officers observed the Defendant place an object into a bag and drop it on the floorboard of the car. The officers ordered the three men out of the car. When the Defendant exited and the officers observed a handgun in the bag, they confiscated it. They arrested the Defendant. Officer Eggleston testified that while they were driving to the jail with the Defendant in custody, the Defendant's phone rang and displayed a picture of the Defendant holding the same gun they confiscated, and that he exclaimed, "You got me." The Defendant, a convicted felon, was charged with being a felon in possession of a firearm. The Defendant moves to suppress the gun, his statements, and the testimony about the phone as the

3

fruit of an unconstitutional search.

## II.  LEGAL STANDARD

"Warrantless searches and seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *U.S v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). But "if a law enforcement officer can point to specific and articulable facts that lead him to reasonably suspect that a particular person is committing, or about to commit, a crime, the officer may briefly detain—that is, 'seize'—the person to investigate. *U.S. v. Hill*, 752 F.3d at 1033. The officer must be able to articulate more than an "'inchoate and unparticularized suspicion or hunch' of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-124 (2000) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). To determine whether an officer's suspicion, "as based on specific and articulable facts, was reasonable, the totality of the circumstances must be considered." *U.S. v. Hill*, 752 F.3d at 1033. The government has the burden of proving "the specific and articulable facts that support the reasonableness of the suspicion." *Id.*

"Whether the facts shown support reasonable suspicion is a question of law." *Id.* "In reviewing the propriety of an officer's conduct, courts do not have available empirical studies dealing with inferences drawn from suspicious behavior, and [courts] cannot reasonably demand scientific certainty from judges or law enforcement officers where none exists." *Illinois v. Wardlow*, 528 U.S. at 124-125. Therefore, determining whether reasonable suspicion exists "must be based on commonsense judgments and inferences about human behavior." *Id.* at 125. The fact that behavior is susceptible of an innocent explanation does not necessarily mean that an officer's suspicion is not reasonable. *Id.* at 125 ("Even in *Terry*, the conduct justifying the stop

was ambiguous and susceptible of an innocent explanation."). The conduct constituting reasonable suspicion need not be illegal by itself. *Id.* In fact, the purpose of a *Terry* stop is to "resolve the ambiguity." *Id.*

In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Supreme Court found that the Illinois police, "converging on an area known for heavy narcotics trafficking to investigate drug transactions," had reasonable suspicion to stop the defendant, "who looked in the direction of the officers and fled." *Id.* at 121, 122. The Court noted that "[a]n individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing the crime." *Id.* at 124. Nevertheless, "officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation"; therefore, "the fact that the stop occurred in a 'high crime area' [is] among the relevant contextual considerations in a *Terry* analysis. *Id.* (quoting *Adams v. Williams*, 407 U.S. 143, 144 (1972)). The Court also observed that "nervous, evasive behavior is a pertinent factor in determining reasonable suspicion," but noted that individuals have a right to ignore the police, and that "any 'refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for a detention or seizure.'" *Id.* at 124, 125 (quoting *Florida v. Bostick*, 501 U.S. 429, 437 (1991)). In holding that reasonable suspicion existed, the Court held that the defendant's flight was a factor properly to be considered. *Id.* at 125.

The Fifth Circuit applied *Wardlow* in the recent case of *United States v. Hill*, 752 F.3d 1029 (5th Cir. 2014). In *Hill*, the Court found that officers looking for suspicious activity did not have reasonable suspicion to stop the defendant, who was sitting in a legally-parked car, backed

into a parking space, when the defendant's girlfriend got out of the car and walked briskly towards the apartment building. *Id.* at 1031. The Court rejected these circumstances, urged by the government, as creating a reasonable suspicion: (1) the manner in which the car was parked, because people conducting drug transactions often back into parking spaces to hide their license plate tags, *id.* at 1036; (2) the defendant's girlfriend's abrupt exit from the car was furtive and evasive; (3) the county where the stop occurred had experienced an increase in criminal activity, and had a significant amount of illegal drug activity; (4) the parking lot of the apartment complex where the officers stopped the defendant was a "hotspot" for crime," *id.* at 1031; and (5) the defendant was in the area at night, *id*. at 1036.

The Court found that the manner in which the car was parked was of "little persuasive value," because a person can back into a parking space for "an entirely innocent reason." *Id.* at 1036. The Court found the abrupt exit of the defendant's girlfriend from the car unpersuasive because although she "*could* have exited the car out of a desire to flee from the police," she could have exited "because [defendant] drove her home, they finished saying their 'goodbyes,' and she was preparing to go inside." *Id.* at 1037 (emphasis in original). The Court noted that most of the testimony about the level of crime applied to the whole county, not to the particular apartment complex where the stop occurred, and the police were not "responding to any report of criminal activity nor did they have any particular reason to think that crime was happening there at the moment of their arrival." *Id*. at 1035. The Fifth Circuit noted that the Supreme Court confirmed that a person's presence in a high crime area, particularly at night, is a factor that can be considered by the Court. *Id.* at 1035-1036. However, the fact that the defendant was "sitting with a woman in his car in the apartment parking lot" at 11:00 P.M. on a weekend did not

provide reasonable suspicion. *Id.*

### III. ANALYSIS

Considering the totality of the circumstances in this case, the Court finds that the government has not met its burden to show that the officers had reasonable suspicion to stop the vehicle in which the Defendant was a passenger. *See U.S. v. Hill*, 752 F.3d at 1033 (the government has the burden of showing reasonable suspicion). Following the example of the Fifth Circuit in *Hill*, the Court will consider each factor the government claims indicates suspicious activity, then evaluate the weight the Court should give each factor. These circumstances may support the officers' reasonable suspicion: (1) the door to the Orange Motel, out of which the Defendant was peeking, was propped open, and that was somewhat unusual; (2) the Defendant was there at night; (3) the officers observed the Defendant over a period of 2-5 minutes; (4) the officers had a combined thirty years of experience; (5) the Defendant was in a place known to be associated with drug crimes, prostitution, and robberies; (6) the Defendant evaded the officers when he first spotted them from the hallway; and (7) the Defendant seemed to evade the officers a second time when he and Dorado ostensibly hid behind bushes or cars.

First, the Court finds unpersuasive the government's argument that the door having been propped open was suspicious. A closed door would conceal activity, and an open door would likely not suggest criminal activity. The government suggested that the door could have been open to allow nonresidents to enter the hallway; however, the officers testified that the Orange Motel's doors were often unlocked or the locks were broken, so there would be no need to prop the doors open to admit visitors. Here, the "government attempts to put an ominous gloss on what appears almost entirely ordinary." *U.S. v. Hill*, 752 F.3d 1029, 1034 (5th Cir. 2014).

7

Second, the Court also finds unpersuasive the government's argument that the "late hour" contributes to the suspiciousness of the Defendant's activities. Although it was dark when the officers observed the Defendant, it was only 8:30 P.M. Third, the Court is unconvinced that the length of the officers' observation, 2-5 minutes, supports reasonable suspicion. At worst, the Defendant was avoiding the officers, which he has a constitutional right to do.

Although experienced police officers may be "able to perceive and articulate meaning in given conduct which would be wholly innocent to the untrained observer," *Brown v. Texas*, 443 U.S. 47, 52 n.2 (1979), the Court is required to search for "specific and articulable facts" that the suspicion was reasonable. *U.S. v. Hill*, 752 F.3d at 1033.

The factors that most strongly support a finding of reasonable suspicion are the Defendant's alleged efforts to evade the police and the fact that the Defendant was at the Orange Motel, where many crimes had occurred, at night. These factors are insufficient to constitute reasonable suspicion. The officers' hunch that something wrong was afoot cannot be justified in hindsight. The issue is whether their suspicion was reasonable and articulable at the time. *See United States v. Handy*, 222 F. App'x 414, 415 (5th Cir. 2007) (unpublished) (officers were justified in stopping suspect after receiving a report of a crime, in part because he matched the race of an informant's description and because he was at the address where the criminal activity was reported to have occurred). The officers acknowledged that guests not involved in criminal activity, such as construction workers, stayed at the Orange Motel. "An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime." *Illinois v. Wardlow*, 528 U.S. at 124.

8

Although the Defendant quickly pulled back out of the officers' view after they first spotted him, he hardly engaged in "headlong flight," which is "the consummate act of evasion." *Illinois v. Wardlow*, 528 U.S. at 124. Officer Eggleston conceded that guests of the Orange Motel often immediately scatter when they see police officers, and that guests of the hotel sometimes scream "cops." The officers presume that the Defendant and Dorado evaded the police for a second time by ducking and hiding under cars or a hedge, although the officers admitted they did not see furtive gestures or movements constituting hiding by the Defendant or Dorado. The Court is not convinced that the Defendant and Dorado could not have quickly reached the white car while the officers' vision was obstructed. There are many potential explanations for the Defendant's decision to move out of the officers' view—including a desire to avoid the police merely because of his prior convictions and experiences.

There are several other problems with the government's argument that reasonable suspicion existed. First, if the Defendant was attempting to avoid the police, he would presumably have stayed inside the Orange Motel, not walk outside towards the car, either carrying a gun or entering a vehicle where a gun was. The Defendant then apparently sat in a car with its lights on, in plain view, in a well-lit parking lot, which seems inconsistent with an intent to avoid being seen by the police. In fact, Dorado pulled out of the parking space just as the officers drove by, which also seems inconsistent with an intent to avoid them.

Finally, the officers gave no explanation of what criminal activity they suspected. Although the officers are not required to show that they suspected a particular criminal act, they must show that they actually suspected *criminal* activity. *See U.S. v. Hill*, 752 F.3d at 1033 ("[L]aw enforcement [must] point to specific and articulable facts that lead him to reasonably

9

suspect that a particular person is committing, or about to commit, a crime.").

Considering all the factors, and the weight the Court accords to facts extant here, the Court finds them to be more like *U.S. v. Hill* than *Illinois v. Wardlow*. Because the government has not proven that the stop was constitutionally warranted, the Court **GRANTS** the Defendant's Motion to Suppress. In light of the ruling, subject to appeal, the government should advise the Court within two weeks whether it has any admissible evidence to support the firearm charge. Assuming it does not, that charge will be dismissed with prejudice.

**SO ORDERED.**

January 16, 2015.

*[signature]*
**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**